# EXHIBIT A

**SETTLEMENT AGREEMENT AND AMENDED AND RESTATED MUTUAL CONFIDENTIALITY AGREEMENT**

THIS SETTLMENT AGREEMENT AND AMENDED AND RESTATED MUTUAL CONFIDENTIALITY AGREEMENT (the "Agreement") is made as of the last date of execution by the signatories hereunder (the "Effective Date"), and is made and entered into by and between REBEKAH KATHERINE BREWIS, an Illinois resident ("Brewis") on the one hand; and AARON L. PETERSON, a Michigan resident ("Peterson"); Peterson Farms, Fresh, LLC and Peterson Farms, Inc. (the "Peterson Entities") on the other hand. Brewis, Peterson, and the Peterson Entities are collectively referred to as the "Parties" and each individually a "Party").

**BACKGROUND**

WHEREAS, Brewis and Peterson previously entered into that certain Mutual Confidentiality Agreement dated March 21, 2024 (the "Prior Agreement");

WHEREAS, Brewis filed a lawsuit in the United States District Court for the Northern District of Illinois, titled *Rebekah Katherine Brewis v. Peterson Farms Fresh, LLC, Aaron Leroy Peterson, et al.*, Civil Action No. 1:25-cv-03513 (the "Litigation");

WHEREAS, Brewis and Peterson have in the past disclosed (each, in such role, a "Disclosing Party"), directly or indirectly, certain confidential or sensitive information to the other Party (in such role, the "Receiving Party") and may in the future disclose additional confidential or sensitive information to the Receiving Party; and

WHEREAS, the Parties desire to settle, compromise, and forever discharge all claims as hereinafter described and restate and amend and the Prior Agreement as set forth herein.

NOW, THEREFORE, in consideration of the covenants set forth herein and disclosure of certain confidential information, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties mutually agree as follows:

**1.** **Payment.** Peterson agrees to pay Brewis the sum of Twenty-Five Thousand Dollars ($25,000.00) within three (3) days of the Effective Date, payable as follows:

**Navy Federal Credit Union**
**Routing Number: 256074974**
**Account Number: [redacted]6882**
**Account name: Rebekah Brewis**
**Account type: Checking**

The Parties acknowledge and agree that Peterson's obligation to pay the Settlement Payment is expressly conditioned upon Brewis complying with her obligations in paragraphs two, four, and five below.

**2. Joint Motion to Seal and Dismissal of Litigation.** Within two days of the Effective Date, the Parties shall file a joint motion seeking to have the Litigation sealed from public record. The Parties hereby agree that good cause exists to seal the public record and that, in the Parties' opinion, there are no public policy considerations that would warrant denying such a motion to seal. Contemporaneously with the filing of a joint motion to seal the record, the Parties agree to file a stipulation with the Court dismissing the Litigation as to Peterson and the Peterson Entities, and Brewis agrees to voluntarily dismiss, in their entirety, all claims against any remaining defendants in the Litigation. The Parties agree that the dismissal of the Litigation will be with prejudice and without costs or attorney fees to any party.

**3. Mutual Confidentiality Obligations.**

(a) The Receiving Party hereby agrees, to treat as strictly confidential and in accordance with this Agreement all Confidential Information (as defined below) of the Disclosing Party. The term "Confidential Information" shall include (i) any and all information, data, records, statements, specifications related to Disclosing Party, any relationships that the Disclosing Party has had in the past or is considering (including any relationship between the Parties) and any prior communications between or relating to the Parties, including, phone calls, videos, text messages, emails, photos or other recordings or videos related to, or referencing, Disclosing Party or the Parties (in each case (A) whether in verbal, written, electronic, graphic, or other format, and whether or not subject to patent, copyright, or other legal protection and (B) regardless of who prepared, captured or possesses such items or when they were received, prepared or captured), and (ii) the fact that the Parties have entered into this Agreement or that Disclosing Party has provided any information to the Receiving Party. Receiving Party acknowledges and agrees that the Confidential Information is proprietary to and valuable confidential information of the Disclosing Party, and that any disclosure or unauthorized use thereof may cause irreparable harm and loss to the Disclosing Party.

(b) Without limitation to the terms of Section 1(a), the Receiving Party further agrees, without the prior written consent of the Disclosing Party and subject to Sections 3 and 4 below:

(i) to (A) keep all of the Disclosing Party's Confidential Information strictly confidential, (B) not use any of the Disclosing Party's Confidential Information, (C) not to copy, transmit or otherwise reproduce any Confidential Information and (D) not to export or reexport (within the meaning of U.S. or other export control laws or regulations) any Confidential Information; and

(ii) to not, directly or indirectly, disclose or make available, in whole or in part, any of the Disclosing Party's Confidential Information to any other person (in any form or nature, including in-person contact, phone calls, text messages, e-mails, and/or any form of social media posts, comments or messages).

**4. Mutual Agreement Regarding Destruction of Confidential Information.** Promptly following the execution of this Agreement (and in any event within two (2) days

following the execution of this Agreement), the Receiving Party shall permanently destroy (and, upon the Disclosing Party's written request, send written confirmation (by email being sufficient) of any such destruction to the Disclosing Party) all tangible or intangible representations of all of the Disclosing Party's Confidential Information (whether provided to the Receiving Party by the Disclosing Party, or whether created by the Receiving Party or a third party), including, without limitation any Confidential Information (which, for the sake of clarity, includes phone calls, videos, text messages, emails, photos or other recordings or videos related to, or referencing, Disclosing Party or the Parties) stored on Receiving Party's phone, computer, tablet or other electronic device(s) and physical copies of any such information.

**5. <u>Deletion of Internet Content; No Contact; Non-Disparagement.</u>**

(a) Immediately following the execution of this Agreement, Brewis shall erase and, to the fullest extent possible by Brewis, delete all internet or social media content, reviews, or internet posts of any kind or nature, made to, made about, or referencing, directly or indirectly, Peterson or the Peterson Entities. From and after the Effective Date, Brewis shall not make, or cause or encourage any third party to make, any further internet or social media posts or content referencing, directly or indirectly, Peterson or the Peterson Entities.

(b) Immediately following the execution of this Agreement, Peterson and the Peterson Entities shall erase and, to the fullest extent possible, delete all internet or social media content, reviews, or internet posts of any kind or nature, made to, made about, or referencing, directly or indirectly, Brewis. From and after the Effective Date, Peterson and the Peterson Entities shall not make, or cause or encourage any third party to make, any further internet or social media posts or content referencing, directly or indirectly, Brewis.

(c) From and after the Effective Date, Brewis shall not, directly or indirectly, contact (in any form or nature, including in-person contact, phone calls, text messages, e-mails, and/or any form of social media posts, comments or messages) Peterson or any person or entity related to or known by Peterson or the Peterson Entities, including, without limitation, any family member, friend, colleague or business relationship of Peterson or any employee, representative, consultant, customer or vendor of any entity to which Peterson is associated, including the Peterson Entities.

(d) From and after the Effective Date, Peterson and the Peterson Entities shall not, directly or indirectly, contact (in any form or nature, including in-person contact, phone calls, text messages, e-mails, and/or any form of social media posts, comments or messages) Brewis.

(e) The Parties shall refrain from communicating orally, or in writing, or by any other manner whatsoever (in any form or nature, including in-person contact, phone calls, text messages, e-mails, and/or any form of social media posts, comments or messages), and from causing or encouraging any third party from communicating in any such manner, any disparaging, damaging, criticizing, or injurious claim, remark, allegation, statement, opinion, comment, innuendo or information of any kind or nature whatsoever, the effect or intention of which is to cause embarrassment, damage, or injury to the reputation, business, or standing in the community to the other Parties, regardless of whether any such communication is or may be true or founded in facts.

**6. <u>Exclusions</u>.** The Parties may disclose a copy of this Agreement (but not any other

Confidential Information) to their respective legal advisors or financial advisors; provided, that Receiving Party shall be responsible for compliance by Receiving Party's advisors with the terms of this Agreement. In the event of any breach of this Agreement by the other Party, the non-breaching Party may disclose the content of this Agreement (but not any other Confidential Information) in connection with the enforcement of the obligations under this Agreement.

**7.** **Obligations of Law.** The Receiving Party may disclose Confidential Information of the Disclosing Party to the extent that it is required by law, regulatory authority, or other applicable judicial or governmental order (collectively, "Law") to disclose such Confidential Information, as advised in writing by Receiving Party's counsel, provided that, the Receiving Party furnishes the Disclosing Party with written notice of the disclosure, a reasonable period of time prior to the disclosure, to the extent practicable in the circumstances, and allows the Disclosing Party the option of (and, upon the Disclosing Party's request, reasonably assists in) challenging the obligation to disclose the information, and further provided that any such disclosure is limited to that required by Law and that the Receiving Party uses reasonable efforts to continue to preserve the confidentiality of any Confidential Information so disclosed, including, but not limited to, seeking a protective order (upon the written request of the Disclosing Party) to ensure that any such information is treated as confidential.

**8.** **Release.** Brewis, on behalf of herself and all of her representatives, agents, insurers, successors and assigns, and all others who may claim through her, forever releases and discharges Peterson and the Peterson Entities, and any affiliate, subsidiary, parent, or sister entities, and their respective officers, directors, employees, owners, members, shareholders, partners, agents, representatives, successors, and assigns, from any and all claims, suits, demands, obligations, allegations, responsibilities, rights, administrative actions and causes of action (and all related damages, liabilities, costs and expenses), of any kind or character, whether now known or unknown, asserted or unasserted, liquidated or unliquidated, secured or unsecured (collectively, "Claims"), existing or accrued as of the Effective Date of this Agreement; provided, however, that nothing in this Agreement shall in any way release any Claim with respect to a breach of this Agreement. Brewis agrees, for herself and the other releasing parties described above, not to institute any lawsuit or other proceeding or bring any claim or action with respect to any Claim released by her or them pursuant to this Agreement.

**9.** **Remedies**. Each Party hereby acknowledges that a violation by it of this Agreement would result in irreparable harm to the non-breaching Party, and that damages may be an inadequate remedy. Each Party, therefore, agrees that in addition to all remedies at law, the non-breaching Party shall be entitled to equitable relief, including, without limitation, the right to obtain an injunction to secure the specific performance of this Agreement and/or to prevent a breach or contemplated breach of this Agreement, without any requirement that such non-breaching Party post a bond as a condition of such relief.

**10.** **Term.** The term of this Agreement shall commence on the Effective Date and shall continue in perpetuity unless Peterson or the Peterson Entities default on an obligation under this Agreement. In the event of such a claimed default, Brewis shall provide written notice of default to Peterson and the Peterson entities, and Peterson and the Peterson entities shall have thirty (30) days to cure any such default. If Peterson and/or the Peterson Entities timely cure the default, the

Agreement shall remain in full force and effect. Written notice of default shall be provided via e-mail and overnight mail to:

Brion B. Doyle, Esq.
Varnum LLP
P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
bbdoyle@varnumlaw.com

**11.** **Voluntary Agreement and Authority to Sign.** The Parties expressly declare and represent that they have read the Agreement. The Parties further expressly declare and represent that they fully understand the content and effect of this Agreement and that they approve and accept the terms and conditions contained herein and that this Agreement is executed freely and voluntarily.

**12.** **Construction.** This Agreement shall be construed as if it was drafted by the Parties jointly and shall not be construed against any party, regardless of which party drafted any specific provision hereof. In the event of ambiguity, this Agreement shall be interpreted in accordance with the plain meaning of its terms and shall not be construed strictly for or against any of the Parties.

**13.** **Choice of Law.** This Agreement and the rights and obligations of the Parties under this Agreement, shall be governed, construed, interpreted and enforced in accordance with the laws of the State of Michigan, regardless of any choice of law or conflict of law provision or rule of any other jurisdiction that would cause the application of the laws of any other jurisdiction. Any and all actions concerning any dispute arising hereunder shall be filed and maintained in the Circuit Court of Kent County, Michigan or the federal District Court for the Western District of Michigan. The parties specifically consent and submit to the jurisdiction and venue of such state or federal court, and irrevocably waive any objections either may have based on improper venue or forum non conveniens to the conducting of any proceeding in any such court.

**14.** **Amended and Restated Agreement**. The provisions of this Agreement shall supersede all contemporaneous written, oral or electronic agreements, communications and understandings and all prior oral and written communications, agreements and understandings between the Parties with respect to the subject matter of this Agreement, including, without limitation, the Prior Agreement.

**15.** **Miscellaneous**. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and lawful assigns. Neither Party may assign all or any part of this Agreement to any person without the other Party's prior written consent, which may be withheld for any reason or no reason. This Agreement may be amended only by a written amendment signed by both Parties. No provision of this Agreement may be waived unless done so in a writing, and no waiver by a Party of any breach or failure to comply with any provision of this Agreement by the other Party shall be construed as or constitute a continuing waiver of such provision or a waiver of any other breach of or failure to comply with any other provision.

16. **Agreement of Validity.** The Parties believe that every provision of this Agreement is effective and valid under applicable law, and whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid. If any provision of this Agreement is held, in whole or in part, to be invalid, the remainder of such provision and this Agreement shall remain in full force and effect, with the offensive term or condition being stricken only to the extent necessary to comply with any conflicting law. This Agreement is the only agreement between the Parties relating to its subject matter, and there are no representations, warranties, or other understandings between the Parties except as expressly set forth in this Agreement.

17. **Counterparts.** This Agreement may be executed by fax, email, portable document format (.pdf) and in one or more counterparts, each of which will be deemed to be an original copy of this Agreement, and all of which, when taken together, shall be deemed to constitute one and the same agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

Date: 10/10/2025, 2025

Rebekah Katherine Brewis

Rebekah Katherine Brewis

Date: 10/10, 2025

Aaron L. Peterson

Aaron Peterson

Date: 10/10, 2025

Aaron L. Peterson

Peterson Farms Fresh, LLC

By: Aaron L Peterson

Its: CEO

Date: 10/10, 2025

Aaron L. Peterson

Peterson Farms, Inc.

By: Aaron L. Peterson

Its: CEO